**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATT JOHANSON | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:24cv13105 |
| | ) | |
| DISCOVER FINANCIAL SERVICES, | ) | **JURY TRIAL DEMANDED** |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Plaintiff, Matt Johanson ("Plaintiff" or "Mr. Johanson"), by his attorneys, Lázaro Law Group, LLC, complains of Discover Financial Services ("Defendant") as follows:

## NATURE OF THIS ACTION

1. Mr. Johanson brings this action against Defendant for breach of implied covenant of good faith and fair dealing, retaliation for engaging in protected activity under Title VII of the Civil Rights Act of 1964 ("Title VII"), and retaliation under 42 U.S.C. § 1981 ("Section 1981"). Mr. Johanson's claims are brought in response to Defendant's attempt to deprive him of earned equity awards in an arbitrary and discriminatory manner and unlawful termination of his employment after 27 years of valuable service to the Company.

## PARTIES

2. Plaintiff, Mr. Johanson, is a resident of Chicago, Illinois. From May 1996 to October 2023, Mr. Johanson worked for Defendant in Illinois.

3. Defendant is a Delaware corporation with its headquarters and principal place of business in Riverwoods, Illinois.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Mr. Johanson's Title VII claim pursuant to 28 U.S.C. §§ 1331 and 1343. The Court also has jurisdiction over Plaintiff's Section 1981 claim as it arises under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant's principal place of business is in this District and a substantial portion of the events giving rise to Mr. Johanson's claims occurred in this District.

6. On April 22, 2024, Mr. Johanson timely filed a Charge of Discrimination under Title VII with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge Number 440-2024-07602.

7. On September 25, 2024, the EEOC issued Mr. Johanson a Notice of Right to Sue, which entitled Mr. Johanson to initiate a civil action under federal law within 90 days of receipt. *See* **Exhibit A**.

## FACTS COMMON TO ALL COUNTS

### I. DEFENDANT'S EMPLOYMENT OF MR. JOHANSON

8. In May 1996, Defendant hired Mr. Johanson. From around Q1 2022 until October 2023, Mr. Johanson served as Defendant's Senior Vice President, Chief Environmental, Social, Governance and Social Impact Officer.

9. As Discover's first ever Chief ESG Officer and SVP Social Impact, Mr. Johanson was responsible for establishing Discover's ESG program, which included collaborating with Discover's Executive Committee to establish an ESG Philosophy and Environmental, Social, and Governance position statements and short- and long-term goals that were documented in Discover's 2002 ESG Report:

https://www.discover.com/content/dam/discover/en_us/esg/docs/2022%20ESG%20Report_final_0925.pdf. Mr. Johanson led the ESG and Social Impact teams, worked across the enterprise to ensure activities were coordinated to achieve Discover's ESG goals, chaired the ESG Steering Committee comprised of senior leaders from across the organization, reported quarterly into the Nominating, Governance and Public Responsibility Committee of the Board of Directors, met with Institutional Investors to answer specific questions around Discover's ESG program and progress, and represented Discover in public and private forums such as the National Minority Supplier Development Council.

10. In or around May 2021, Plaintiff was involved in opening a call center for Defendant in the south side community of Chatham. Juatise Gathings ("Gathings"), a Black woman, served as the Director of Operations and Community Outreach for the Chatham Center.

11. In or around the summer of 2022 and September 2022, Plaintiff observed that Defendant, including members of Defendant's Human Resource team were unfairly targeting Gathings, both on the basis of her race and in retaliation for her protected complaints regarding race discrimination in the workplace.

12. On or about October 10, 2022, Plaintiff protested to Chief Human Resource Officer Andy Eichfield about what he reasonably believed was a racially-motivated and retaliatory campaign against Gathings. As far as Plaintiff was aware, no corrective action was taken in response to his complaint.

13. On or about February 17, 2023, Gathings recorded a "Freakonomics" podcast wherein she publicly stated that she believed that Discover needed to make improvements in its diversity and equity work. That podcast was publicly released on approximately April 5, 2023.

14. Plaintiff echoed Gathings' sentiments on Discover's need to make improvements in its diversity and equity work. Specifically, Plaintiff complained to Discover that its attendance policy was having a disparate impact on Black employees in Chatham.

15. Shortly thereafter, Plaintiff learned that a retaliatory investigation had been launched into him.

16. In approximately May 2023, Plaintiff sent a note to CEO Roger Hochschild, Executive Vice-President of Operations Dan Capozzi, CHRO Eichfield and Legal Counsel Hope Melman about his concerns relating to the racially motivated investigation into Juatise Gathings. Plaintiff was concerned the investigation was racially motivated and in retaliation for Gathings protesting race discrimination.

17. In or around the summer of 2023, Gathings identified Johanson as a witness to her complaints of race discrimination and retaliation, including as it related to the investigation that had been launched against her.

18. Shortly thereafter, Defendant retaliated against Plaintiff by terminating his employment and canceling his unvested equity and accrued short-term incentive compensation in the following amounts:

a. 2023 Grant Performance Shares: 1,383

b. 2023 Grant Restricted Stock: 1,383

c. 2023 President's Award Restricted Stock: 1,271.

19. In the termination meeting, CHRO Eichfield stated expressly stated that Plaintiff was being fired due to his association with and/or demonstrated support for Gathings. Specifically, Eichfield stated that Plaintiff was being terminated because he was too supportive of Gathings, he

had inappropriately intervened with Gathings' year-end performance rating by giving Gathings a positive performance review and displayed "favoritism" towards Gathings.

20. Defendant's stated reason for termination clearly demonstrated that Defendant fired Plaintiff for protesting what he reasonably believed to be discrimination and retaliation against Gathings.

## II. DEFENDANT'S OMNIBUS INCENTIVE PLAN DESCRIBES THE CIRCUMSTANCES UNDER WHICH IT MAY CANCEL UNVESTED SHARES

21. At all times relevant to this Complaint, Mr. Johanson was eligible to participate in Defendant's Amended 2014 Omnibus Incentive Plan (the "Plan"). The purposes of the Plan were "(i) to attract, retain and motivate employees, (ii) to compensate employees for their contributions to the growth and profits of the Company, and (iii) to encourage employees to own Company stock."

22. The Plan was administered by the Compensation and Leadership Committee of the Board (the "Committee"). The Committee has exclusive discretion to select eligible employees under the Plan and grant awards that include, but are not limited to, Restricted Stock ("RSUs") and Performance Stock Units ("PSUs").

23. According to the Plan, RSUs are "a right to receive a specified number of Common Shares" in Discover, subject to certain terms and conditions, upon the expiration of a restriction or vesting period. A PSU is a type of RSU awarded based on a multiplier determined by Defendant's performance on certain benchmarks. Each award of PSUs or RSUs was memorialized by an accompanying certificate that set forth the terms and conditions of the award (an "Award Certificate").

24. Under the Plan, the Committee granted Mr. Johanson RSUs and PSUs in 2021, 2022, and 2023. Each award was accompanied by an Award Certificate describing the terms and

conditions under which Mr. Johanson was granted the award under the Plan. The Award Certificates for Mr. Johanson's 2021, 2022, and 2023 RSU and PSU award detailed the following Scheduled Vesting Dates for awards:

| YEAR | STOCK UNIT | AMOUNT | SCHEDULED VESTING DATE |
|---|---|---|---|
| 2021 | PSU | 1,624 | February 1, 2024 |
| | RSU | 1,624 | February 1, 2022<br>February 1, 2023<br>February 1, 2024 |
| 2022 | PSU | 1,250 | February 1, 2025 |
| | RSU | 1,250 | February 1, 2023<br>February 1, 2024<br>February 1, 2025 |
| | President's Award RSUs | 1,271 | February 1, 2024<br>February 1, 2025 |
| 2023 | PSU | 1,383 | February 1, 2026 |
| | RSU | 1,383 | February 1, 2024<br>February 1, 2025<br>February 1, 2026 |

25. The Award Certificates for Mr. Johanson's 2021 and 2022 RSUs and PSUs also include the amount of shares, their scheduled vesting date, and the terms and conditions under which Mr. Johanson was granted those awards.

26. Additionally, each Award Certificate contained a clawback provision, which required the recipient to forfeit vested or unvested PSUs and RSUs "[i]n the event and to the extent the Committee reasonably determines that the performance considered by the Committee, and on the basis of which the amount of [PSUs/RSUs] were granted or converted to Shares, was based on

Discover's material noncompliance with any financial reporting requirement … which requires Discover to file a restatement of its financial statements."

27. The clawback provision only allowed Defendant to recover vested or unvested equity in an amount proportional to the size of the restated financials. As a result, the largest possible clawback for conduct that caused only a small restatement of Defendant's earnings would be minimal.

28. Separate from the clawback provision, each Award Certificate also included a "Risk Review" provision. This section of the Award Certificate details Defendant's process and assessment for determining whether the award recipient "engaged in any willful or reckless violation of the Company's risk policies." Based on the assessment, "the Company may determine that all or a portion of [the recipient's PSUs and/or RSUs] will be forfeited."

29. Unlike the clawback provision, the "Risk Review" provision applied only to unvested RSUs and PSUs. After RSUs and PSUs turn into ordinary Discover stock, the only option Discover has to recover vested equity awards was the proportional clawback for conduct leading to misstated earnings.

30. The Risk Review provision is similar for both PSUs and RSUs. Mr. Johanson's 2023 Award Certificate for RSUs, for instance, details that "no RSUs will convert to Shares until the Chief Human Resources & Administrative Officer receives confirmation from the Chief Risk Officer, or their delegate, that a review has been completed by the Chief Risk Officer, or their delegate[.]" The same process holds for PSUs, with the only distinction being that "no PSUs will convert to Shares until ... the Committee certifies the extent to which the performance criteria set for set forth in this Award Certificate have been satisfied."

31. According to the language of the Risk Review provision of the Award Certificates, the Company has two levels of discretion in deciding to cancel equity awards. First, the Chief Risk Officer must "determine whether [the employee] engaged in any willful or reckless violation of the Company's risk policies." After that determination is made, "then the Company *may* determine that all or a portion of [the employee's RSUs/PSUs] will be forfeited." (emphasis added).

32. On information and belief, after the Chief Risk Officer makes an initial determination that an employee has engaged in a willful or reckless violation of the Company's risk policies, the ultimate decision of whether and to what extent to cancel RSUs or PSUs is made by the Company's Internal Committee on Risk Management ("ICRM"). The ICRM is a management committee at Defendant and does not ordinarily include members of the Board of Directors. The Chief Risk Officer sits on the ICRM.

33. While the Award Certificates state that the risk review decision of the Chief Risk Officer is separate from the Company's decision (through the ICRM) to forfeit an employee's equity awards, in practice the Chief Risk Officer heavily influences the ICRM such that the ICRM typically rubber stamps the Chief Risk Officer's decisions.

34. In addition to the provisions providing for the clawback of vested or unvested RSUs and PSUs, and the Risk Review provision applicable only to unvested awards, the Award Certificates also specify circumstances involving "Investigative Holds":

> In the event that the Company has either commenced an investigation of a matter that you oversaw or were involved in or has evidence that may require investigation of a matter that you oversaw or were involved in, in either case concerning a breach of one of the obligations hereunder or a serious violation of Company policy, the Company may freeze your account and effectuate a transfer restriction such that your converted and delivered [PSUs/RSUs] and any [s]hares and dividend equivalents associated therewith may not be sold or transferred *until such time as the Company reasonably believes the matter to be resolved.* (emphasis added).

## III. DEFENDANT INTERVIEWS MR. JOHANSON IN AN INTERNAL INVESTIGATION AND, SHORTLY AFTER, ARBITRARILY CANCELS HIS UNVESTED EQUITY

35. In or around April or May 2023, Defendant contacted Mr. Johanson about setting up an interview to discuss an internal review that had begun in the first quarter of 2023. Shortly thereafter, in or around May 2023, Mr. Johanson was interviewed by Defendant and Defendant's outside counsel on two separate occasions.

36. At that time, there was substantial external pressure on Defendant regarding how it misclassified certain credit cards issued to individuals as "commercial" credit cards for which merchants had to pay a higher interchange fee.

37. Defendant stated publicly that the incorrect treatment of these cards began "around mid-2007".

38. In January 2024, Defendant arbitrarily and without a clear articulated basis, exercised its Risk Review provision to cancel Mr. Johanson's unvested awards of Discover stock. It did so under the guise of "misconduct".

39. Defendant arbitrarily and without a clear articulated basis canceled Mr. Johanson's unvested shares in the following amounts:

a. 351 RSUs pursuant to an Award Certificate dated February 19, 2021;

b. 540 RSUs pursuant to an Award Certificate dated February 25, 2022;

c. 1,055 PSUs pursuant to an Award Certificate dated February 19, 2021; and

d. 812 PSUs pursuant to an Award Certificate dated February 25, 2022.

40. To justify its actions, Defendant pointed to the purported result of its investigation findings from the internal investigation.

41. In reality, this was a convenient, pretextual excuse for Defendant to exercise its discretion arbitrarily and to discriminate against Mr. Johanson for engaging in protected activity, as set forth above.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTACT (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

42. Plaintiff incorporated Paragraphs 1 through 41 as though fully stated herein.

43. Mr. Johanson entered into the Plan and Award Certificates with Defendant.

44. The 2021 Award Certificate for Restricted Stock Units constitutes a valid and enforceable contract.

45. The 2021 Award Certificate for Performance Stock Units constitutes a valid and enforceable contract.

46. The 2022 Award Certificate for Restricted Stock Units constitutes a valid and enforceable contract.

47. The 2022 Award Certificate for Performance Stock Units constitutes a valid and enforceable contract.

48. The 2023 Award Certificate for Restricted Stock Units constitutes a valid and enforceable contract.

49. The 2023 Award Certificate for Performance Stock Units constitutes a valid and enforceable contract.

50. Mr. Johanson had a reasonable expectation at the time he entered the Plan and Award Certificates that (1) the Company would not make a determination that he engaged in "willful or reckless violations of the Company's risk policies" in bad faith, and (2) that the Company would not decide to cancel his RSU and PSU awards in bad faith.

51. This term was implied in the Plan and Award Certificates. The Plan and Award Certificates do not specify the Company's duties with respect to determining whether Mr. Johanson engaged in "willful or reckless violations of the Company's risk policies" or whether the Company could cancel Mr. Johanson's unvested RSUs and PSUs under the Risk Review provision.

52. The Company's decision that Mr. Johanson engaged in "willful or reckless violations of the Company's risk policies" and that his unvested RSUs and PSUs were forfeited as a result was made in bad faith to unjustly enrich the Company.

53. As a direct and proximate result of the Company's breach of its implied duties not to determine that Mr. Johanson engaged in "willful or reckless violations of the Company's risk policies" in bad faith or to find in bad faith that his unvested RSUs and PSUs were forfeited, Mr. Johanson has suffered, and continues to suffer, damages in the amount to be proven at trial but no less than $500,000.

**COUNT II: VIOLATION OF TITLE VII (RETALIATION)**

54. Plaintiff incorporates Paragraphs 1 through 53 as though fully set forth herein.

55. Mr. Johanson engaged in protected activity when he complained about discrimination and retaliation as set forth above.

56. In retaliation for Mr. Johanson's complaints, Defendant terminated his employment and canceled his unvested equity as explained in detail above.

57. There is a causal connection between Mr. Johanson's complaints and the adverse actions taken by Defendant in response to his protected activity.

58. Defendant retaliated against Mr. Johanson for engaging in protected activity in violation of Section 704(a) of Title VII.

59. As a result of Defendant's unlawful actions, Mr. Johanson suffered, and continues to suffer, damages in an amount to be proven at trial, including economic and non-economic damages.

**COUNT III: VIOLATION OF SECTION 1981 (RETALIATION)**

60. Plaintiff incorporates Paragraph 1 through 59 as though fully set forth herein.

61. Mr. Johanson engaged in protected activity when he complained about discrimination and retaliation as set forth above.

62. In retaliation for Mr. Johanson's complaints, Defendant terminated his employment and canceled his unvested equity as explained above.

63. There is a causal connection between Mr. Johanson's complaints and the adverse actions taken by Defendant in response to his protected activity.

64. Defendant retaliated against Mr. Johanson for engaging in protected activity in violation of Section 1981.

65. As a result of Defendant's unlawful actions, Mr. Johanson suffered, and continues to suffer, damages in an amount to be proven at trial, including economic and non-economic damages.

**WHEREFORE,** Mr. Johanson respectfully requests that this Court enter judgment in his favor and against Defendant and award him economic and non-economic damages in an amount to be proven at trial, including interest, attorneys' fees, compensatory and actual damages, and all other relief as the Court deems appropriate.

**JURY DEMAND**

Mr. Johanson hereby demands trial by jury.

**RESPECTFULLY SUBMITTED,**

Dated: December 20, 2024

**LÁZARO LAW GROUP, LLC**
Attorneys for Matt Johanson
321 S. Plymouth Ct. Ste. 1250
Chicago, IL 60604

Rafael E. Lázaro
Catherine J. Roland
rlazaro@lazarolawgroup.com
croland@lazarolawgroup.com